UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                 )
CRAIG PRICE,                     )
                                 )
          Petitioner,            )
                                 )
     v.                          )    C.A. Nos. 04-38 S; 12-24 S
                                 )
ASHBEL T. WALL; STATE OF RI;     )
and PETER F. KILMARTIN,          )
                                 )
          Respondents.           )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

     Before the Court is the State of Rhode Island's motion
to dismiss Petitioner Craig Price's applications under 28
U.S.C. § 2254 for writ of habeas corpus (ECF Nos. 16 and
4).[1]   For the reasons set forth below, that motion is
GRANTED.

---

     [1] As discussed below, Price has filed two petitions
challenging the same judgment against him.  His case was
assigned two different case numbers.  Many of the documents
at issue here were filed in both cases.  When citing these
documents, the Court provides the relevant docket number
from each case.

I.   Background[2]

In 1989, Price, who was then only fifteen years old, admitted his responsibility for four brutal murders. The Family Court imposed the maximum penalty available at the time: commission to the Rhode Island Training School until Price's twenty-first birthday. Over the course of the next five years, Price repeatedly disobeyed court orders requiring him to cooperate in psychiatric and psychological treatment. As a result, Price was tried and convicted for criminal contempt. He received a sentence of twenty-five years, ten years imprisonment and fifteen years supervised release. Later, as a result of a probation violation, seven of the fifteen years supervised release were revoked, adding time to his imprisonment. Price's conviction was affirmed on direct appeal. See State v. Price, 820 A.2d 956 (R.I. 2003).

---

[2] The facts of this case are set forth in great detail in the two opinions issued by the Rhode Island Supreme Court. See State v. Price, 820 A.2d 956 (R.I. 2003); Price v. Wall, 31 A.3d 995 (R.I. 2011). While Price vaguely takes issue with certain unspecified "characterizations" of events by that court, he fails to present any argument that the court's factual findings are incorrect. (See Mem. in Supp. of Pet'r's Reply to Resp't's Mot. to Dismiss ("Price Mem.") 2-3, ECF Nos. 29-1 and 18-1.) For that reason, this Court accepts the facts as described by the Rhode Island Supreme Court and declines to exhaustively reproduce those facts here. See 28 U.S.C. § 2254(e)(1).

2

Price subsequently filed a § 2254 petition in this Court. After Magistrate Judge Lovegreen found that the petition included unexhausted claims, Price moved to stay the case while he presented those claims in state court. Ultimately, the Rhode Island Supreme Court affirmed the denial of Price's application for state post-conviction relief. See Price v. Wall, 31 A.3d 995 (R.I. 2011). Shortly thereafter, Price filed a second § 2254 petition.

II. Discussion

Section 2254 provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of this provision, "an unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (internal citation

and quotation marks omitted); see also Morgan v. Dickhaut,
677 F.3d 39, 47 (1st Cir. 2012) ("[H]abeas review involves
the layering of two standards.  The habeas question of
whether the state court decision is objectively
unreasonable is layered on top of the underlying standard
governing the constitutional right asserted." (internal
citation omitted)).  Indeed, "[a] state court's
determination that a claim lacks merit precludes federal
habeas relief so long as fairminded jurists could disagree
on the correctness of the state court's decision."
Harrington, 131 S. Ct. at 786 (internal citation and
quotation marks omitted).  The Supreme Court has explained
that "[i]f this standard is difficult to meet, that is
because it was meant to be."  Id.

In the present case, Price's petitions raise numerous
arguments.  However, in his response to the state's motion
to dismiss, Price expressly "concedes the first six (6)
claims being:   (1) Judgment of Acquittal/Self-
Incrimination;   .   .   .   (3)[3] Jury Instruction/Self-
Incrimination; (2) Judgment of Acquittal/Advice of Counsel;

_____

[3]  Price appears to have numbered his claims to
correspond to the list in the state's memorandum.  (See
State of Rhode Island's Mem. in Supp. of Mot. to Dismiss 9-
10, ECF Nos. 16 and 4.)

. . . (4) Jury Instruction/Advice of Counsel; (5) and (6) Statute-of-Limitations and Laches." (Mem. in Supp. of Pet'r's Reply to Resp't's Mot. to Dismiss ("Price Mem.") 7, ECF Nos. 29-1 and 18-1 (internal quotation marks omitted).) There was good reason for this waiver. Price did not have any Fifth Amendment right to refuse psychiatric evaluation out of fear that it would lead to civil commitment;[4] advice of counsel is not a defense to a criminal contempt charge;[5] and statutes of limitations and laches present issues of state law not cognizable in a § 2254 petition.[6]

---

[4] See Allen v. Illinois, 478 U.S. 364, 375 (1986) (holding that the petitioner had no Fifth Amendment privilege against self-incrimination in connection with proceedings to declare him a sexually dangerous person).

[5] See United States v. Remini, 967 F.2d 754, 757 (2d Cir. 1992) ("[A]dvice of counsel is not a defense to the act of contempt, although it may be considered in mitigation of punishment." (internal citation omitted)); United States v. Armstrong, 781 F.2d 700, 706 (9th Cir. 1986) ("Although a defendant's good faith belief that he is complying with the order of the court may prevent a finding of willfulness, good faith reliance on the advice of counsel to disobey a court order will not.").

[6] See Figueroa v. Comm'r of Correction, 596 F. Supp. 2d 482, 492 (D. Conn. 2009) (holding that the claim that the trial judge erred when he "denied a motion to dismiss the charges on state statute of limitations grounds" was a "matter[] of state law and [was] not cognizable in [a § 2254] action").

A.   Second or Successive Petition

As described above, Price has "twice brought claims contesting the same custody imposed by the same judgment of a state court." Gautier v. Wall, 620 F.3d 58, 59 (1st Cir. 2010) (quoting Burton v. Stewart, 549 U.S. 147, 154 (2007) (per curiam)).  Accordingly, his most recent petition was "second or successive" within the meaning of 28 U.S.C. § 2244(b).  Such petitions may be considered only with authorization from the First Circuit.  § 2244(b)(3)(A). Because Price has not received such authorization, his second petition must be dismissed for lack of jurisdiction. See Gautier, 620 F.3d at 61.

This dismissal is of little consequence with respect to most of Price's claims.  Indeed, all but one of the claims Price is currently pressing were raised in his initial petition.  The one exception is Price's excessive sentence claim.  However, Price could have included this ground for relief in his first petition, but he failed to do so; accordingly this claim is also statutorily barred and must be dismissed.  In any event, as discussed below,

this claim would fail on the merits even if it were properly before the Court.[7]

B.  Merits

Price presses five claims in his response to the state's motion to dismiss:  (1) "Batson Claim"; (2) "Double Jeopardy Claim"; (3) "Ineffective Assistance of Counsel Claim"; (4) "Violation of Sentence/Due Process Claim"; and (5) "Excessive of [sic] Sentence Claim."  (Price Mem. 7 (internal quotation marks omitted).)   The Court will address the merits of each claim in turn.

1.  Batson Challenge

In Batson v. Kentucky, the Supreme Court held that, "[a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race."  476 U.S. 79, 89 (1986) (internal citation and quotation marks omitted).  The Court has subsequently explained:

_____

[7]  Out of an abundance of caution, the Court will nevertheless proceed to address the merits of the excessive sentence claim in section II.B.5.

7

A defendant's <u>Batson</u> challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. . . . Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.

<u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006) (internal citation omitted). With respect to the second step, the prosecutor's rationale need not be "persuasive, or even plausible." <u>Id.</u> (internal citation and quotation marks omitted). Indeed, "so long as the reason is not inherently discriminatory, it suffices." <u>Id.</u> The ultimate inquiry is whether the peremptory strike resulted from "purposeful discrimination," and the trial judge's findings on this point are entitled to "great deference." <u>Batson</u>, 476 U.S. at 98 & n.21; <u>see also Hernandez v. New York</u>, 500 U.S. 352, 365 (1991) ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.").

Moreover, in the specific context of a § 2254 petition, a federal court may only grant relief on Batson grounds "if it was unreasonable to credit the prosecutor's race-neutral explanations." Rice, 546 U.S. at 338.

In the present case, the prosecutor exercised a peremptory strike to an African-American juror. After defense counsel lodged a Batson objection, the trial judge directed the government to articulate its race-neutral reasons for the challenge. The prosecutor responded by pointing to, among other things, a particular question directed by defense counsel to the juror, who "had a relative and a friend who had been sentenced to the Adult Correctional Institutions." Price, 820 A.2d at 968 n.2. After this information had been disclosed, defense counsel asked the juror "whether, if he voted for acquittal, he had considered that the state 'might look unkindly upon your friends and relatives.'" Id. The prosecutor explained his concern that, as a result of this line of inquiry, "a seed was planted in this young man's mind that they [his relative and friend] might be susceptible to retribution." Id. at 968. Additionally, the prosecutor cited the juror's statement "that he listens to his boss" as well as the juror's "age" and "abilities." Id. The juror had

9

testified that he was twenty years old and worked at a Shaw's supermarket. The trial judge, considering all the factors, including the fact that there were two other African-American jurors who the government did not strike, credited the prosecutor's explanation.

Contrary to Price's contentions, this decision was not unreasonable. Price suggests the government's explanation was "not logical" in light of the fact that any fear of reprisals the juror might have had would have inured to its benefit. (Price Mem. 11.) However, the state's interest in a criminal case is not whether it wins or loses; its interest is ensuring that justice is realized. Accordingly, the prosecutor was not obligated to tacitly allow a juror to be seated who he believed might decide the case in the government's favor on improper grounds.

In an attempt to counter the force of this reasoning, Price cites the proposition that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step." Miller-El v. Dretke, 545 U.S. 231, 241 (2005). He points to a white juror who stated that she had several friends

10

who used to work for the state police.  Both the prosecutor and defense counsel asked the juror whether she was worried that, if she was selected for jury service and found the defendant not guilty, her friends would be mad at her. Contrary to Price's claims, this concern is fundamentally distinct from the fear that the stricken juror might decide the case in the state's favor to avoid reprisals against his vulnerable friends.

Price also points out that, while the government cited the juror's age and abilities to justify the strike, it failed to challenge another juror who was a twenty-year-old college sophomore and stated that he respected authority. As an initial matter, there is no indication that the other young juror had any relatives vulnerable to potential retribution by state officials.  Moreover, the prosecutor could rationally have viewed the "abilities" of a twenty-year-old college sophomore as significantly different than those of an individual of similar age who worked at a grocery store.[8]

---

[8]  The Court is also not swayed by the peripheral circumstances cited in Price's brief.  It is true that, at the conclusion of the case, when twelve of the remaining fourteen jurors were chosen to sit, the two African-Americans were excluded.  However, Price failed to argue before the state court that this exclusion was intentional.

## 2.   Double Jeopardy

Price next argues that his trial and conviction for criminal contempt, which occurred after his prior imprisonment for civil contempt, violated the Double Jeopardy Clause. Price's contention on this point is quite narrow. He concedes that his initial imprisonment for civil contempt posed no double jeopardy problem. (See Price Mem. 21.)   Indeed, the Supreme Court has unequivocally held that sanctions for civil and criminal contempt may be constitutionally imposed for the same act. See Yates v. United States, 355 U.S. 66, 74 (1957) ("The civil and criminal sentences served distinct purposes, the one coercive, the other punitive and deterrent . . . ."). However, Price contends that, with approximately three weeks remaining in his civil sentence, compliance with the court's order was rendered impossible, and, accordingly, the civil sanction became criminal in nature.

---

(See App., Br.-in-Chief of Resp't/Def.-Appellant 25.) Price also points out that, after he had used his last peremptory challenge, a former District Attorney was seated on the jury. Price, however, does not claim that the trial court's decision not to excuse that juror presents an independent ground for relief. Rather, he merely suggests that the court's ruling "exacerbated the unfairness of the jury selection process." (Price Mem. 16.)

12

Civil contempt, unlike its criminal counterpart, is "designed to compel future compliance with a court order." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994). Sanctions are "considered to be coercive and avoidable through obedience." Id.

> Imprisonment for a fixed term . . . is coercive when the contemnor is given the option of earlier release if he complies. In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket.

Id. at 828 (internal citation and quotation marks omitted).

In the present case, after finding Price in civil contempt, the trial court ordered him to be imprisoned "until such time as he would purge himself of contempt by cooperating with the evaluation process," with an outer limit of one year. Price, 820 A.2d at 963. Price did ultimately move to purge the contempt, but, on June 8, 1995, a mere three weeks before the limit on Price's imprisonment was due to expire, the trial court denied that motion. This ruling was based on the forensic psychiatrist's report that Price lied to him about the homicides. That same day, Price alleges that the court granted a motion to stay by the Department of Children, Youth and Families ("DCYF"), effectively suspending the

13

agency's responsibility for administering a psychiatric evaluation and making it impossible for Price to comply with the court's order.

The Court is unconvinced by Price's arguments on this point. Even accepting his contention that, as of June 8, 1995, DCYF was no longer involved in his case, compliance with the court's order to participate in psychiatric and psychological evaluation was not impossible. Indeed, Price and the court could have arranged for a different organization to conduct the evaluation. If Price believed compliance had become impossible, he should have raised this issue with the court, so that other treatment options could have been explored. Instead, after June 8, 1995, he made no effort to cooperate with treatment professionals.

### 3.   Ineffective Assistance

Price relatedly argues that his trial and appellate counsel was constitutionally ineffective for failing to raise the double jeopardy argument outlined above. To be clear, counsel did argue that Price's conviction for criminal contempt in the wake of his imprisonment for civil contempt violated the Double Jeopardy Clause. (See App., Br.-in-Chief of Resp't/Def.-Appellant 37-39.)  However, Price faults him for failing to specifically argue that

14

double jeopardy was not implicated until June 8, 1995, when the trial court denied his motion to purge and granted DCYF's motion to stay.

In order to succeed on an ineffective assistance of counsel claim, a defendant must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Here, as previously discussed, Price's proffered double jeopardy argument is meritless. Thus, counsel's failure to raise it was not objectively unreasonable, and there is no reasonable probability that the result at trial would have been different if the argument had been made.

### 4.   Due Process

Price next contends that his constitutional right to due process was infringed when he was found to have violated his probation after sentencing but before he began serving that sentence. Price's argument on this point focuses on the Rhode Island Supreme Court's decision in State v. Dantzler, 690 A.2d 338 (R.I. 1997), which involved an interpretation of the relevant state statutes. As such,

15

it is essentially a state law claim not cognizable in a §
2254 petition.    Price cannot change this reality by
attempting to shoehorn his claim into the mold of due
process.   See Pollock v. Sec'y, Florida Dep't of Corrs.,
349 F. App'x 383, 385 (11th Cir. 2009) ("That Appellant
casts his quarrel with Florida's interpretation and
application of Florida law in constitutional due process
terms fails to transform a claimed violation of state
statutes into a constitutional deprivation."); Cole v.
Hopkins, 56 F. App'x 742, 744 (8th Cir. 2003) ("[W]e cannot
review [the petitioner's] claim because, at its root, the
claim presents a question of state law. Repackaging the
claim in due process wrapping does not transform a state
law issue into a federal claim.").

   5.   Excessive Sentence

After Price was convicted of criminal contempt, the
trial court sentenced him to twenty-five years, ten years
imprisonment and a fifteen-year suspended sentence.   Price
was subsequently found to have violated his probation and
ordered to serve seven of the fifteen years that had been
suspended.   Price now contends that this sentence was so
excessive as to violate the Eighth Amendment.    As
previously discussed, Price's failure to raise this claim

in his first petition forecloses relief.   In any event, Price's claim fails on the merits.

The Supreme Court has stated that, with respect to the issue of whether a sentence for a term of years violates the Eighth Amendment, "the only relevant clearly established law amenable to the contrary to or unreasonable application of framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the exceedingly rare and extreme case." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (denying habeas relief where the petitioner was sentenced to two consecutive terms of twenty-five years to life for petty theft under California's three strikes law) (internal citation and quotation marks omitted).   In the specific context of criminal contempt, a trial judge imposing sentence may properly consider "the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future." United States v. United Mine Workers of Am., 330 U.S. 258, 303 (1947).

17

Price's argument is largely predicated on the fact that his sentence is significantly longer than most, if not all, sentences imposed for criminal contempt. However, his was far from the typical contempt case. Price's involvement with the Rhode Island courts began at the age of fifteen, when he admitted committing four murders. The murders were accomplished by "multiple stab wounds and blunt-force trauma" and "exhibited an unusual homicidal fury." Price, 820 A.2d at 959 n.1. Notwithstanding the severity of these crimes, Price could only be held until his twenty-first birthday. In an effort to make the most of this time, the trial court repeatedly ordered Price to cooperate in psychiatric evaluation and treatment. The stakes of Price's compliance with these orders were extraordinarily high. Indeed, one doctor warned:

> Without the assistance of a skilled therapist through the long and arduous process of examination of his thoughts and fantasies about what happened and his understanding of his reasoning or lack of same for engaging in this behavior, it is unlikely that Craig Price will be significantly different (and therefore at less risk of repeating this behavior) upon his release than he was on the day of his commitment . . . .

Id. at 961-62.   Price's self-interested and dangerous refusal to participate in treatment was largely motivated by his desire to avoid civil commitment.

In these circumstances, it was not unreasonable for the Rhode Island Supreme Court to affirm the twenty-five year sentence.   The sentence imposed by the trial court served to advance the traditional sentencing goals of retribution and deterrence.   It punished Price for behavior that posed a grave danger to the public, and it served as a deterrent to individuals who may face similar circumstances in the future.   Unless sentences for this type of conduct are stiff, future defendants, like Price, may decide to take their chances with contempt proceedings rather than risk civil commitment.

In short, the stakes of Price's compliance or non-compliance with the court's orders could not have been higher.   In these unique circumstances, it was not unreasonable for the Rhode Island court to uphold a twenty-five year sentence for criminal contempt.

III. Conclusion

For the foregoing reasons, the state's motion to dismiss is GRANTED, and Price's petitions are hereby DENIED and DISMISSED.

19

<u>RULING ON CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts, this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA) because Price has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Price is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter.   <u>See</u> Rule 11(a), Rules Governing Section 2254 Proceedings.


IT IS SO ORDERED.

*William E. Smith*
William E. Smith
United States District Judge
Date:  September 25, 2013

20